DANIEL O. HASTINGS, as Special Trustee of STANDARD GAS AND ELECTRIC COMPANY, Respondent, v. H. M. BYLLESBY AND COMPANY, et al., Defendants, and HAYSTONE SECURITIES CORPORATION, Defendant-Appellant.

First Department, March 12, 1943.

644

*Horace G. Hitchcock* of counsel (*Dwight R. Collin* with him on the brief; *Chadbourne, Wallace, Parke & Whiteside,* attorneys), for appellant.

*Sidney R Nussenfeld* of counsel (*William H. Button* and *Francis J. Quillinan,* attorneys), for respondent.

CALLAHAN, J. The question presented upon this appeal is whether the present action has been barred by the Statute of Limitations. The action is brought by plaintiff, as special trustee, under the following circumstances:

A petition for the reorganization of Standard Gas and Electric Company (hereinafter referred to as " Standard "), under former section 77B (48 U. S. Stat. 912) of the Bankruptcy Act, was filed in the United States District Court for the District of Delaware on September 27, 1935. The debtor was temporarily continued in possession of its property and affairs. On October 25, 1935, an order was entered making this possession permanent, and granting to said debtor " all the powers of a Trustee appointed pursuant to said Section 77B." On November 26, 1937, an order was entered in the bankruptcy proceedings appointing plaintiff special trustee for the purpose of bringing specific suits referred to in the order, on causes of action alleged to exist in favor of the debtor. In 1938 a suit similar to the present action was brought by this plaintiff in the Federal courts, but was dismissed for lack of jurisdiction. (*Matter of Standard Gas & Electric Co.* [*Hastings* v. *Byllesby & Co.*] 119 F. 2d 658.) On December 8, 1939, the present action was commenced by the service of process issued out of the Supreme Court of this State.

The capacity of plaintiff to bring this suit as a special trustee was litigated by certain defendants through the courts of this State, it being eventually held by our Court of Appeals (286 N. Y. 468) that plaintiff as such trustee has capacity to sue.

Plaintiff contends that he is seeking relief under section 60 of the General Corporation Law. The complaint states nineteen causes of action.

The defendants herein are the former officers and directors of Standard, and other persons and corporations sued for having conspired with them to injure Standard. The present appellant, Haystone Securities Corporation (hereinafter referred to as " Haystone "), is named as defendant in only the sixteenth cause of action.

The complaint sets forth a complicated series of transactions having to do with the sale of certain shares of stock of two utility companies (Pittsburgh Utilities Corporation, and United Railways Investment Company, hereinafter referred to as "Pittsburgh" and "United," respectively) to Standard and to a second company (Standard Power and Light Corporation, later a subsidiary of Standard and hereinafter referred to as "Standard Power") in connection with which sales defendants are alleged to have made exorbitant and unlawful profits. The manipulations complained of are alleged to have been accomplished through two syndicates which dominated and controlled Standard. Haystone is charged with being a member of one of these syndicates. Standard is said to have footed the bill to finance the transactions, all to the damage of Standard.

As the complaint is framed, Haystone is joined with others acting in the Ladenburg Syndicate under the general designation of "Ladenburg." The transactions alleged as to Ladenburg must, therefore, be deemed charged as to Haystone. As gleaned from the complaint and affidavit of plaintiff, the transactions involved may be summarized as follows:

In 1924 Ladenburg controlled a corporation known as the Philadelphia Company through the intermediate companies, Pittsburgh and United. This control is alleged to have been threatened by a second syndicate which is referred to in the complaint as Byllesby. Ladenburg caused additional shares of the two controlling companies above named to be issued, which it acquired. Haystone's participation in this acquisition is alleged.

In 1925 agreements were made by Ladenburg and Byllesby terminating in the sale of certain shares of stock in Pittsburgh and United to Standard Power. As noted, Standard Power later became a subsidiary of Standard. The capital stock of Standard Power was divided so that there were large amounts of preferred and of a class of common stock known as "A" stock. This was non-voting stock. A small issue of common stock having voting power was known as "B" stock. Ladenburg and Standard divided this "B" stock. Eventually, and after complicated intercorporate transactions, Byllesby had 120,000 shares of "A" stock, and Standard had 180,000 shares of the same. Byllesby transferred 20,000 of this "A" stock, and Standard 130,000 shares thereof to Ladenburg without consideration. Thus Ladenburg obtained one-half of the "A" stock as well as one-half of the "B" stock of Standard

Power. Then Byllesby and Ladenburg sold their Pittsburgh stock to Standard. Ladenburg is said to have obtained an exorbitant cash profit of $2,000,000. Ladenburg is alleged to have obtained this cash profit of $2,000,000, as well as 150,000 shares of the "A" stock of Standard Power, without consideration.

In June, 1925, two transactions took place which, however, need not be referred to in detail because they had to do merely with securing control, and with a profit made by Byllesby.

All of the foregoing acts occurred more than ten years before the filing of the petition in bankruptcy.

We now come to the transactions of 1926. In March of that year there was a redistribution of the stock possessed by Ladenburg, Standard and Byllesby under a contract entered into between them. Under this contract Ladenburg exchanged with Standard 15,000 shares of the B stock of Standard Power for 15,000 additional shares of A stock of said company.

Ladenburg also is alleged to have sold to Standard its stock in a corporation known as United Railways Investment Holding Corporation which controlled United. Ladenburg received an additional $11,000,000 in cash from Standard out of these two transactions. It increased its total holdings in the A stock of Standard Power to 165,000 shares.

Voting control of Pittsburgh and Standard Power were thus surrendered to Standard Gas as part of the 1926 transactions.

There were provisions in the 1926 agreement that Ladenburg and Byllesby were to divide the banking business of Standard Power, United, and their subsidiaries, and likewise to divide all commissions and profits on such banking business. There is no allegation in the complaint or affidavit, however, that Haystone received any banker's commissions, or other profits pursuant to this last-mentioned agreement.

It will thus be seen that, as a net result of the 1926 transactions, Ladenburg obtained $11,000,000 cash profit, and 15,000 shares of a different class of stock.

As to the $11,000,000 in cash, assuming that it was obtained wholly without consideration, the profit made by Ladenburg did not exceed the correlated losses suffered by Standard. Accordingly, an action at law to recover this sum would afford Standard an adequate remedy. No accounting would be necessary. The six-year Statute of Limitations would control. (*Dunlop's Sons, Inc.,* v. *Spurr,* 285 N. Y. 333; *Frank* v. *Carlisle,* 261 App. Div. 13, affd. 286 N. Y. 586.)

648

Thus it will be seen that no necessity for equitable relief would arise in respect to any of the 1926 transactions, unless in connection with the acquisition of the 15,000 additional shares of " A " stock of Standard Power in exchange for the former " B " stock. There is no allegation that Standard suffered a monetary loss in this exchange, nor is there any claim to the right of rescission. The exchange merely resulted in Ladenburg's receiving a different stock for that wrongfully obtained in 1925. It restored complete control of Standard Power to Standard. We think, therefore, Standard's damage would be measured by the difference in value, if any, between the two stocks exchanged, and again a cause of action at law would suffice to afford adequate relief to Standard. Therefore, no right to equitable relief arose from any of the 1926 transactions involved in the complaint. It would appear immaterial as to what form of relief was required as to the wrongs done in 1925. Any action for the injuries suffered in 1925 would be barred by the ten-year Statute of Limitations when the petition in bankruptcy was filed. The complaint and the affidavit of plaintiff allege the sale of the 165,000 shares of " A " stock of Standard Power by Ladenburg in 1930. But a sale at a later date would not alter the fact that any cause of action based on the wrong accrued at the time of the acquisition of the stock in 1925. The sale of the property wrongfully acquired would not create any new cause of action, but at most would change the form of relief to which the purchaser might otherwise have been entitled. Even if it did, this would be no answer to the claim that the Statute of Limitations had commenced to run when the alleged wrong was inflicted. (*Cooley* v. *Lobdell,* 153 N. Y. 596).

Despite the fact that all of the claims set forth in the complaint against Haystone appear to have been barred by the Statutes of Limitation applicable under the law of this State when the petition for reorganization of Standard was filed on September 27, 1935, Special Term held that the plaintiff's cause of action against the moving defendant was not barred.

The reasoning upon which Special Term based this conclusion was that the present action was not merely a derivative one in which plaintiff was asserting a claim of Standard for injury to its property rights, but was one in the nature of a judgment creditor's suit. Special Term reasoned that as subdivision c of section 70 of the Bankruptcy Act (U. S. Code, tit. 11, § 110, subd. [c]) provides that a trustee in bankruptcy is vested with " all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatis-

fied," plaintiff acquired the rights of a judgment creditor on his appointment as trustee, and had a cause of action which did not accrue until his appointment. We deem this ruling erroneous. No doubt a trustee in bankruptcy may sue to enforce the rights of a creditor, as well as to sue to collect those claims owned by the bankrupt estate. The trustee would be empowered to set aside fraudulent transfers of the bankrupt's property, where the wrong complained of was actionable at common law, or under the Bankruptcy Act, section 67 (U. S. Code, tit. 11, § 107). But the present action was not one to set aside a fraudulent transfer of the bankrupt's property. Plaintiff was not trying to get from Haystone its share of the proceeds of any property acquired by the Ladenburg syndicate; it was charging it with liability for all the wrongful acts of the corporate fiduciaries, and those acting in concert with it.

Section 61 of the General Corporation Law provides that an action for the relief prescribed in section 60 may be brought by the injured corporation, or by a creditor, or a trustee in bankruptcy thereof, among others. Section 60 provides, in the main, for actions against directors or officers of a corporation. It enumerates the relief which may be afforded against such directors or officers. It includes in subdivision 5 thereof a right of action " to set aside a transfer of property, made by one or more directors or officers of a corporation, contrary to a provision of law, where the transferee knew the purpose of the transfer."

It would appear that Haystone was joined as a party defendant herein either as such a transferee, or as one conspiring with an officer or director to commit a breach of a fiduciary duty. It was not an officer and director of Standard and could not be liable as such.

Special Term based its decision denying the motion to dismiss the complaint by applying to this action the rule laid down in *Buttles* v. *Smith* (281 N. Y. 226). In the case cited it was held that a suit brought under section 60 of the General Corporation Law by a receiver appointed in behalf of a judgment creditor to set aside transfers of corporate property as in fraud of creditors did not accrue until the return of execution on the creditor's primary judgment. We think that it was improper to extend the rule laid down in *Buttles* v. *Smith* (*supra*) to a case of the present nature. Insofar as the present suit was one under section 60 of the General Corporation Law, it was for the wrongs committed by the directors and officers of

Standard and those defendants charged with conspiring with them, based on mismanagement, waste or neglect of said officers or directors and was not one to recover from Haystone as a transferee with knowledge. In other words, although plaintiff has the rights of a creditor, as well as those of Standard, he is presently asserting the rights of Standard derivatively.

To reason that outlawed claims owned by a corporation would be revived by the appointment of a trustee in bankruptcy because such trustee obtained the rights of a creditor armed with process, would destroy the Statute of Limitations as a statute of repose. Every reorganization or bankruptcy proceeding would revive all claims that might come within the scope of section 60 of the General Corporation Law based on mismanagement, waste, or neglect, no matter how stale they were. We think that the holding in *Buttles* v. *Smith* (*supra*) was inapplicable to transactions of the present nature, and was only intended to apply when the plaintiff in a suit under that section was asserting the rights of a creditor, as distinguished from the derivative rights of a corporation.

The opinion of the Court of Appeals in *Buttles* v. *Smith* (*supra*) indicates the difference between an action for damages in consequence of wilfull and negligent acts of those entrusted with corporate funds, and cases brought to impound property which transferees had obtained from the corporation in fraud of its creditors.

A comparison of the facts alleged in *Buttles* v. *Smith* (*supra*) and those alleged here might be helpful. In that case, one Anness, in 1933, recovered a judgment against Seaboard Trading Company on an obligation of the latter which had matured in 1926. Thereafter a temporary receiver of Seaboard was appointed, and it was discovered that there had been unlawful transfers of assets of Seaboard occurring in the years between 1927 and 1929. The defendants in *Buttles* v. *Smith* (*supra*) were stockbrokers to whom the officers and directors of Seaboard had conveyed the assets of the corporation in connection with personal speculations of said officers and directors. After Anness had obtained his judgment, he brought an action in sequestration, and secured the appointment of a receiver, who, in 1938, brought suit in aid of execution to impound the corporate assets of Seaboard which had been so fraudulently transferred. Three causes of action were asserted as to each of the brokerage firms sued. *First,* a cause of action under section 15 of the Stock Corporation Law; *second,* a cause of action under section 274 of the Debtor and Creditor Law, and

*third,* a cause of action under subdivision 5 of section 60 of the General Corporation Law. In each of these causes of action it was alleged that the officers and directors of Seaboard had unlawfully transferred corporate assets to the defendants in fraud of the rights of Anness as a creditor, and further alleged that the defendants knew or should have known that the transfers were to the detriment and damage of creditors.

The Court of Appeals in its opinion pointed out that as no right of action in equity to impound corporate assets under section 15 of the Stock Corporation Law, or under section 60 of the General Corporation Law would exist until the legal remedy of the creditor had been exhausted by the return of execution on his judgment, the rights of action asserted under these statutes had not accrued until such return of execution on Anness' judgment. Accordingly, the court held that the action brought in 1938 was timely insofar as the relief sought under the Stock Corporation Law and the General Corporation Law was concerned. At the same time it held that the causes of action under the Debtor and Creditor Law were barred by the Statute of Limitations because Anness had the right to sue to set aside the fraudulent transfers under the Debtor and Creditor Law before he had obtained a judgment on his primary claim.

Comparing the foregoing with the allegations in the present complaint, we find that the present action is not one in sequestration to set aside a transfer of corporate funds as fraudulent, or a suit in aid of a creditor who has litigated his primary claim. Here the action is upon the primary claim of wrongdoing by fiduciaries and others conspiring with them to injure Standard. The complaint charges breach of trust, negligence and waste of corporate funds. There was no allegation that Standard had any creditors at the time of this alleged misconduct, nor any claim that there were transfers of property in fraud of creditors. There is no claim that any of the acts complained of affected the solvency of Standard, or impeded or impaired the rights of creditors. Insolvency is not a prerequisite to a proceeding in reorganization under former section 77B of the Bankruptcy Act. Inability to meet the debts of the corporation to be reorganized as such debts matured would be sufficient. It is clear, therefore, that the present plaintiff is not asserting the rights of creditors, but is attempting to enforce a cause of action existing in favor of Standard in bringing the present action.

Ever since 1925 and 1926, when the acts involved herein took place, a remedy under section 60 of the General Corporation Law has been available to Standard and its stockholders. While the mere fact that such a remedy might have been available to Standard and might not defeat the rights of a creditor to set aside an unlawful transfer (*Shepard Co.* v. *Taylor Publishing Co.*, 234 N. Y. 465), as we have said, the present action is not one to avoid such a transfer.

Aside from the variance in the factual situation involved, the decision in *Buttles* v. *Smith* (*supra*) did not present any consideration of the effect of bankruptcy statutes with respect to the Statute of Limitations applicable to a suit based on a claim owned by the bankrupt, or asserted by a trustee.

We do not pass on the question as to when a cause of action brought by a trustee in bankruptcy to set aside a fraudulent transfer would accrue, or whether the rule indicated in *Buttles* v. *Smith* (*supra*) would apply to such a situation, so as to create any new cause of action for such relief available to the trustee as of the date of his appointment.

Before closing, it might be appropriate to point out that the order appointing plaintiff as special trustee herein limited his right to sue to " all causes of action alleged to exist in favor of the debtor." Therefore, by the terms of the order of his appointment, it would seem that plaintiff was given no power with respect to any claims other than those which existed in favor of Standard immediately prior to the filing of the petition for reorganization. We think, however, that it is unnecessary to determine this appeal on any such narrow ground as the form of the order of appointment. We will assume that it was the intention of the court appointing plaintiff to give him all the powers that a general trustee in bankruptcy would have with respect to the cause of action set forth in the complaint. Despite this assumption, we must hold that the complaint should have been dismissed for the reason that any cause of action alleged against Haystone Securities Corporation was barred by the Statute of Limitations prior to the filing of the petition for reorganization.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion granted.

TOWNLEY, UNTERMYER, DORE and COHN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and the motion granted.